## Case No. 5,669.

GRAHAM et al. v. HOSKINS.

[Olc. 224.] 1

District Court, S. D. New York.    Nov., 1845.

CHARACTER OF TESTIMONY—FOREIGN COURTS—WAGES OF SEAMEN.

1. The testimony of the libellants themselves in an action in rem, the one for the other, although legally admissible, ought to be narrowly scrutinized and received with caution.

2. Courts of a foreign power will take cognizance of the claims of seamen for their wages, only in cases of flagrant wrong or suffering on their part, but not upon an alleged breach of contract, much less to decide upon a quantum meruit. They should seek redress from their own consul.

[Cited in The Hermine, Case No. 6,409.]

3. Services rendered on board a ship while at the dock in Liverpool, do not give to the demand for wages a maritime character, of which an admiralty court can take cognizance.

This is an action in personam against the master of the steamship Great Britain, a British vessel, to recover wages for services by the libellants on board that ship from New York to Liverpool and back to New York. The libel alleges that the libellants are mariners and firemen by trade and profession, and that they shipped, on the 30th of August last, on board the Great Britain, as firemen, to perform the voyage aforesaid, at the rate of £4 sterling each per month; that they continued with the vessel, performing services until her return to this port, when they were both discharged, leaving due to Graham $20 and upwards, and to Currie $14 and upwards, which the master refuses to pay. The answer denies the agreement set up by the libellants, and avers that Currie alone hired on board the ship from the port of New York to Liverpool, and at the rate of £4 per month wages, and that Graham was received on board, with the privilege to work his passage out to Liverpool without pay. It further denies that the libellants did duty on board as they allege; and charges that Currie having received an injury in Liverpool upon his discharge from the ship, was admitted on board at his urgent request, to be brought back to this port; and

2 [From 9 Chi. Leg. News, 370.]
1 [Reported by Edward R. Olcott, Esq.]

that he was unable to do duty during the return voyage; that after Graham had been discharged at Liverpool, he earnestly solicited to be permitted to come on board and work his passage back to New York, and was so received; but that on the voyage back he refused to do such reasonable duty as was required of him, and denies that any wages are due to either libellant. The answer admits the charge in the libel that no written or printed agreement was signed by the libellants, but avers that the ship is a British vessel, and denies the jurisdiction of this court over the subject matter.

A. Nash, for libellants.
G. B. Butler, for respondent.

BETTS, District Judge. The two points of law presented by the pleadings, and one of which was the position most strongly urged on the hearing, I shall pass over as not necessary to be decided in this case. For, first, if the libellants could establish their position, that foreign vessels come within the act of congress of July 20, 1790 [1 Stat. 131], requiring the masters of vessels on foreign voyages to enter into written or printed articles with their seamen, or else to pay them the highest wages allowed at the port of shipment within the preceding three months; or if the jurisdiction of the court is unquestionable, neither point decided in the affirmative would aid the libellants, because they fail to prove any ground of claim to wages in the case.

The only testimony offered by the libellants in support of their claims is that of each libellant swearing for his co-libellant. This species of evidence, though legally admissible in actions in rem by seamen for wages, is always admitted with great caution, and necessarily with very considerable distrust. The temptation to indulge in strong statements in their own favor is exceedingly pressing, and the inducement operating upon the mind of each witness from his personal interest in the subject matter of the suit, is enough to put to the severest test the veracity of suitors. For the persuasion is constantly before their minds, that the testimony they are giving will, to a greater or less degree, influence the judgment which is to be pronounced upon their own case. It is by no means clear, that when seamen unite in actions in personam, they are not subject to the common law rules, applicable to joint parties, or if they are permitted to sue for and recover on distinct and independent claims, that they should then be competent witnesses, each for the other, in such actions. Waiving this matter, however, as an objection not raised on the part of the respondent, and receiving the evidence of the parties as legally admissible, it does not establish any contract of hiring made with them by the respondent, or any agent of the vessel. They did not

ship the same day, and were not together when the bargain was made upon the subject. Currie testifies that Graham was on board and did duty as a fireman, and was to have £4 per month, but he does not state any person with whom the agreement was made. Graham states that he saw Currie's name on the chief engineer's book for £4 per month, but does not know what he agreed to take; heard the chief engineer say that they were to have £4 per month. This testimony is clearly insufficient to make out the case set up by the libellants. It does not appear but that these men are British seamen, and residents of Great Britain, nor that they were discharged at the instance of the respondent, without being permitted to return with the vessel to her home port. If they were so discharged, their proper course would be to seek redress from their own consul. Courts of a foreign power would take cognizance of their claim to wages only in case of flagrant wrong or suffering on their part, but not upon the ground of a breach of contract, much less to decide upon a quantum meruit for services rendered in a British vessel.

The case upon the libellants' own showing would not, therefore, justify a decree in their favor, while the evidence of the respondent clearly shows that there is no color of equity in their demand. Clements, the chief engineer, says, that Currie applied to him to be shipped as a fireman to Liverpool, where he was to be discharged, and he was so hired and paid in full, and discharged on the arrival there of the ship. Graham solicited a passage out to Liverpool, with the privilege of working his passage. He was received on that request, but a fireman becoming disabled on the passage, the engineer put Graham in his place, and allowed him his wages subsequently. He was paid off in full, and discharged upon the arrival of the vessel at Liverpool. Afterwards both men were employed on board by the chief engineer, who hired them as day laborers, in port, to work in the engine-room. Currie received an injury by a fall on the morning the ship was to sail from Liverpool, and after that solicited, as an act of charity, to be brought back to New York in the ship, and the respondent consented thereto, and he was so brought back, and attended by the surgeon of the ship, free of expense, not being able to do any duty. Graham, the day previous to the ship's leaving England, also applied for leave to work his passage back to the United States, to which the respondent consented, and he was received on board upon those terms. This evidence being uncontradicted in any particular, is conclusive upon the merits of the cause. It takes away all ground of an implied assumpsit to pay these men at the same rate as on the outward voyage, and clearly establishes an agreement to bring them back without wages, the one being a disabled seaman, and

the other willing to give his services in compensation for his passage. If there remains any thing due to them for their labor on board the ship at the dock in Liverpool, it is not in respect to them, a demand of a maritime character, of which this court can take cognizance, so that under any aspect of the case, upon the evidence before me, the libellants have totally failed to make out such a case as would entitle them to a decree in their favor. Their libel must be accordingly dismissed, with costs.